| | | |
|---|---|---|
| SHIREIKA WHITMORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:14-CV-316 |
| | § | |
| HSMTX/LIBERTY, LLC, doing business as | § | |
| Liberty Healthcare Center, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant HSMTX/Liberty, LLC's ("Liberty") Amended Motion for Summary Judgment (#12),[1] in which Liberty seeks summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on the grounds that Plaintiff Shireika Whitmore ("Whitmore") has adduced insufficient evidence to support her employment discrimination claims against Liberty. Having considered the pending motion, the pleadings, and the applicable law, the court is of the opinion that Liberty's motion should be granted.

I.      Background

Liberty Healthcare Center is a senior living facility that provides services to elderly residents in Liberty, Texas. Whitmore, an African-American woman, began working for Liberty in June 2013 providing respiratory services to Liberty's residents. The parties do not dispute that Whitmore was hired as an independent contractor by Sheila Shook ("Shook"), Liberty's Director

---

[1] Because the instant motion amends Liberty's original motion for summary judgment (#11), filed on July 15, 2015, the original motion is denied as moot.

of Nursing, and Candy Pedersen ("Pedersen"), the administrator at Liberty.[2] She was employed, along with other respiratory therapists ("RTs"), who have specialized knowledge and training, in Liberty's ventilation unit. Within the unit, the RTs and nursing staff reported to Shook.

According to Liberty, Whitmore had repeated interpersonal conflicts with Liberty's staff during her tenure, including instances in which Whitmore behaved unprofessionally and yelled at staff. Liberty specifically recounts three incidents but asserts that there were other conflicts as well. The first occurred on September 13, 2013, when Whitmore allegedly "harassed and yelled at" Maria Moreno ("Moreno"), a licensed vocational nurse ("the Moreno incident"). Moreno did not want to give a resident Xanax, and Whitmore disagreed with Moreno's decision, despite the fact that "the decision of whether to give a resident certain medications is a nursing judgment." Whitmore purportedly followed Moreno "around the halls of the facility and yelled at her without regard to who else might be present." Both Whitmore and Moreno complained to Pedersen about the incident, and Pedersen conducted an investigation, speaking with both parties. During the investigation, Whitmore admitted to her behavior, and Pedersen verbally counseled Whitmore, telling her that her behavior was inappropriate, that Moreno had felt harassed, and that her behavior would not be tolerated in the future.

The second incident occurred in early November 2013. Whitmore apparently had a disagreement with a member of the nursing staff, Michelle Lopez ("Lopez"), about whether a resident should be given ice chips ("the Lopez incident"). Whitmore allegedly responded by yelling at Lopez and being rude to the resident who requested the ice chips. On November 5,

---

[2] Liberty does not challenge that Whitmore is entitled to the protections of Title VII, even as an independent contractor.

Shook verbally counseled Whitmore about acting unprofessionally and yelling at nursing staff. Shook also completed an "Employee Counsel" form, stating that Whitmore was "rude to resident and staff regarding ice chips." The next day, Pedersen completed a "Concern Form" about the Lopez incident, reporting that Whitmore was yelling at Lopez in front of a resident.

The final event occurred on November 18, 2013, when Whitmore purportedly screamed at a nurse's aide, Sara Ivey ("Ivey") ("the Ivey incident"). After Shook was notified of the event, Shook reported it to Pedersen and removed Whitmore from the schedule while she conducted an investigation. On November 19, Shook called Whitmore to advise her of complaints about her conduct and the need to investigate. Shook also told her that she would be taken off the schedule during the course of the investigation. According to Liberty, Whitmore became emotional during the phone call, began yelling at Shook, and continually interrupted her. Shook told Whitmore that she could not help her and that Whitmore would have to contact Pedersen for any further communication. Shook testified that during her phone call with Whitmore, she did not discuss any details or potential witnesses to the Ivey incident. Shortly after this conversation, Whitmore reportedly called Pedersen and allegedly began yelling and speaking in a disrespectful and insubordinate tone. Pedersen documented the Ivey incident with a Concern Form.

In addition to these three events, Liberty references various instances of Whitmore being confrontational with and yelling at Liberty employees. Specifically, Liberty alleges that Whitmore yelled at employees in front of residents, discussed patient information with staff in front of other residents, "which is a serious infraction and a potential violation of HIPPA," and inappropriately delegated tasks to other staff members. Liberty also reports complaints voiced by both residents and staff regarding Whitmore's conduct and the care she provided to the residents. Liberty asserts

that, as a result of these occasionss of misconduct and Whitmore's insubordination, Pedersen and Shook decided to terminate Whitmore's contract, effective November 20, 2013. Accordingly, Shook did not conduct an investigation and did not interview any witnesses to the Ivey incident.

Whitmore recounts different versions of each event. According to Whitmore, after the Moreno incident, in which she had a "difference of opinion from Moreno as to medication for a patient," Whitmore provided a statement that Moreno's behavior displayed a lack of teamwork and trust. Pedersen investigated the Moreno incident and advised Whitmore that her conduct was unprofessional. According to Whitmore, although both Whitmore and Moreno were loud and Lopez witnessed the incident, Pedersen did not get a statement from Lopez and determined that Whitmore was the only person who had acted inappropriately. Furthermore, Whitmore asserts that a similar dispute occurred between Adella Tatom ("Tatom"), a white RT, and Kristi Broussard ("Broussard"), a black nurse, resulting in Tatom becoming very emotional and leaving her shift early in violation of Liberty's policies, but Pedersen never interviewed Broussard or disciplined Tatom in any fashion.

Whitmore's version of the Lopez incident does not differ significantly from Liberty's account, and Whitmore claims that Shook "did not count that incident against her." She also maintains, however, that the Lopez incident "is the only incident for which Whitmore received any documented counseling—a verbal counseling over the phone." Hence, according to Whitmore, although she did not yell at Lopez, Shook chose to believe Lopez's version of the events and not Whitmore's.

Finally, regarding the Ivey incident, Whitmore explains that she was concerned for a resident's health and called out for Ivey when she could not find her because she needed assistance

with the resident. When Ivey was located, "Whitmore was glad both Ivey and the patient were okay." According to Whitmore, a black RT, Leonia McNeil ("McNeil"), witnessed the event and corroborated Whitmore's assertion that she did not yell at Ivey and or make Ivey cry, but Shook did not take the RT's statement or investigate further. Whitmore also disputes Shook's version of the phone call on November 19, 2013. Whitmore states that "Shook took an unprofessional tone with Whitmore" when telling Whitmore that she would be removed from the schedule and would be unable to collect unemployment compensation during that time. Whitmore admits that she was "on the defensive" during the phone call with Peterson but claims she was understandably so because she wanted "to preserve her job against untrue allegations. On December 9, 2013, Whitmore filed a charge of discrimination with the Texas Workforce Commission, and she was issued a Notice of Right to Sue on April 4, 2014. Whitmore filed her complaint in this court on June 13, 2014, asserting claims of racial discrimination under Title VII, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981. Liberty filed the instant motion on July 23, 2015, asking the court to find that Whitmore failed to raise a genuine issue of material fact as to her Title VII and § 1981 claims.[3]

---

[3] Liberty references Whitmore's § 1981 claim in its motion for summary judgment only in a footnote on page 19, stating: "Plaintiff also asserts claims under 42 U.S.C. 1981. However, the same method of analysis is utilized for Title VII and Section 1981 claims. Thus, the court need analyze only Plaintiff's Title VII claims. If summary judgment is proper as to Plaintiff's Title VII claim due to the failure to raise a genuine issue of material fact, her Section 1981 claims must fail as well." Dkt. 12, p.19 n.3 (citations omitted). The court finds these statements to be sufficient to put Whitmore on notice that Liberty is seeking summary judgment on her § 1981 claim, as well as her Title VII claim.

II.    <u>Analysis</u>

A.    <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323; *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact issue is material if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, ___ F.3d ___, No. 15-60058, 2015 WL 6118765, at *2 (5th Cir. Oct. 16, 2015); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001).  Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Tiblier*, 743 F.3d at 1007 (quoting *Anderson*, 477 U.S. at 248); *accord Haverda v. Hays Cty.*, 742 F.3d 586, 591 (5th Cir. 2013); *Poole*, 691 F.3d at 627.

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). The court must "review the record 'taken as a whole.'" *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *see City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *City of Alexandria*, 740 F.3d at 350; *Tiblier*, 743 F.3d at 1007.. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Hemphill*, 2015 WL 6118765, at *2; *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (2012).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir.

1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468-69); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill*, 2015 WL 6118765, at *2 (citing *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Tiblier*, 743 F.3d at 1007; *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.), *cert. denied*, 555 U.S. 1012 (2008) (quoting *Celotex Corp.*, 477 U.S. at 322-23).

B.    Employment Discrimination under Title VII and § 1981

Whitmore alleges that Liberty intentionally discriminated against her because of her race in violation of Title VII and § 1981 by racially harassing her, denying her employment opportunities, treating her differently than employees of other races, and ultimately terminating

8

her based on her race. She asserts that the working environment at Liberty is "heavily charged with racial discrimination" and that she was "subjected to actions that were intolerably abusive to her because of her race." Liberty denies Whitmore's allegations and asserts that any adverse employment actions concerning Whitmore were based on legitimate, nondiscriminatory reasons or good faith reliance on applicable administrative rulings, orders, or laws.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *accord Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, ___ U.S. ___, 135 S. Ct. 2507, 2516 (2015); *EEOC v. Abercrombie & Fitch Stores, Inc.*, ___ U.S. ___, 135 S. Ct. 2028, 2031 (2015); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2525 (2013); *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2440 (2013). The Civil Rights Act of 1866, 42 U.S.C. § 1981, "provides that all persons in the United States shall have the same contractual rights as 'white citizens.'" *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (citing 42 U.S.C. § 1981(a)); *see Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 n.4 (5th Cir. 2004). "As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). The substantive analysis for discrimination claims asserted under both Title VII and § 1981 is virtually identical. *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)).

Both § 1981 and "Title VII discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)); *accord Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 455 (2006); *Reeves*, 530 U.S. at 142-43; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 349 (5th Cir. 2008).

Under that framework, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *Reeves*, 530 U.S. at 142-43; *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (5th Cir. 2013); *Turner*, 675 F.3d at 892; *Alvarado*, 492 F.3d at 611; *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quotation omitted); *accord Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012); *Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its

employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Haire*, 719 F.3d at 363; *Reed*, 701 F.3d at 439 (quoting *Black*, 646 F.3d at 259); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.* 557 U.S. 167, 169-70 (2009)); *Turner*, 675 F.3d at 901; *Black*, 646 F.3d at 271; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

1.    Prima Facie Case of Discriminatory Discharge

To establish a *prima facie* case of discriminatory discharge based on disparate treatment, a plaintiff must show that:

(1)    she is a member of a protected class;

(2)    she was qualified for the position;

(3)    she was discharged; and

(4)    she was treated less favorably than other similarly situated employees outside the

protected class.[4]

*Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014); *Haire*, 719 F.3d at 364; *Black*, 646 F.3d at 259; *Fahim*, 551 F.3d at 350; *Alvarado*, 492 F.3d at 611. In this case, only the fourth element is in dispute; therefore, to establish her *prima facie* case, Whitmore must show that a non-black employee, who engaged in comparable conduct under similar circumstances, was not terminated. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005); *Aguinaga v. Tex. Alcohol & Beverage Comm'n*, 98 F. App'x 328, 331 (5th Cir. 2004) (holding that plaintiff failed to establish a *prima facie* case of discrimination because he did not provide comparator employees in "nearly identical" circumstances, given their different supervisors, job descriptions, and disciplinary rules).

In this instance, Whitmore has not established a *prima facie* case of race discrimination, as she fails to identify a similarly situated employee outside her protected group who was not terminated under nearly identical circumstances. *Turner*, 675 F.3d at 893; *Fahim*, 551 F.3d at 350. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Turner*, 675 F.3d at 893 (quoting *Lee*, 574 F.3d at 260); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012) Also, "the conduct that drew the adverse employment decision must have

---

[4] A plaintiff may alternatively show that she was replaced by someone outside the protected class. *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000). In this case, there is no evidence as to whether Whitmore was replaced or as to the race of any replacement.

been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260; *see Perez*, 395 F.3d at 210 (emphasizing that assessment of similarity of employees must be viewed from employer's perspective). But, "[e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Lee*, 574 F.3d at 260-61; *Vaughn*, 665 F.3d at 632 (opining that a valid comparator could not be established through an employee that had never committed the same violation that prompted the plaintiff's adverse employment action); *Perez*, 395 F.3d at 213 (holding that in order for employees to be similarly situated, their circumstances, including their misconduct, must be nearly identical).

"In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated." *Corley v. La. ex rel. Div. of Admin.*, 816 F. Supp. 2d 297, 316 (M.D. La. 2011), *aff'd*, No. 11-310707, 2012 WL 5951550 (5th Cir. Nov. 29, 2012); *see Lee*, 574 F.3d at 259-60. Here, although Tatom and Whitmore held the same job as RTs and shared the same supervisor, Shook, Whitmore has failed to put forth evidence that Tatom was similarly situated with respect to Whitmore's history of write-ups and counseling. *Corley*, 816 F. Supp. 2d at 316 (granting summary judgment on plaintiff's Title VII claim where plaintiff had no specific evidence that people outside of his protected class were disciplined less harshly); *see Lee*, 574 F.3d at 259-60.

Furthermore, Whitmore's proffered example of purported misconduct by Tatom, for which she was neither disciplined nor terminated, is not similar to Whitmore's alleged acts of

misconduct. *Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001); *see Lee*, 574 F.3d at 259-60 (recognizing the critical requirement in disparate treatment cases that the "plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions"). Whitmore asserts that Tatom violated Liberty's employee handbook by (1) leaving her department, (2) stopping work before the end of her shift, and (3) leaving during work hours without permission, all as a result of her disagreement with Broussard over whether medication should be given to a resident. According to Whitmore, "Pedersen never took Tatom off the schedule, never investigated the incident, never created a concern form, and allowed [Tatom] to come back to work after she calmed down," despite Shook admitting "that what Tatom did could be a terminable offense."

Even assuming Whitmore's account of this event is accurate, Tatom's conduct is not "nearly identical" to Whitmore's. As an initial matter, Tatom allegedly violated different Liberty policies than Whitmore. *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (finding that employees who engage in different violations of company policy are not similarly situated). Second, there is no evidence that Tatom was accused of yelling at Broussard at work or that Tatom became insubordinate with Pedersen or Shook following the incident. Further, Liberty cites numerous occurrences of Whitmore's inappropriate behavior, revealing a more significant history of Whitmore's violating policies and acting insubordinately. Thus, Tatom cannot serve as an appropriate comparator to Whitmore. Because Whitmore does not identify a similarly situated employee outside her protected class who was treated more favorably, she is unable to establish a disparate treatment claim under Title VII or § 1981. *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005); *Aguinaga*, 98 F. App'x at 331; *Mann v. Frank*, 7 F.3d

1365, 1370 (8th Cir. 1993). Accordingly, summary judgment is warranted as to Whitmore's Title VII and § 1981 claims against Liberty due to her failure to adduce sufficient evidence to establish a prima facie case of discriminatory discharge.

2.    Legitimate, Nondiscriminatory Reason for Termination

Even assuming that Whitmore had established a *prima facie* case, she has failed to produce evidence suggesting that Liberty's proffered reasons for terminating her employment were pretextual or that her race was a motivating factor in the decision. Once Whitmore has set forth a *prima facie* case, the burden shifts to Liberty to articulate a legitimate reason for its actions. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *Hicks*, 509 U.S. at 509); *accord Vaughn*, 665 F.3d at 636; *Alvarado*, 492 F.3d at 611. "The [employer] can meet this burden by submitting evidence that if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Sullivan v. Worley Catastrophe Servs., L.L.C.*, 591 F. App'x 243, 246 (5th Cir. 2014) (quoting *Hicks*, 509 U.S. at 507); *accord Vaughn*, 665 F.3d at 636.

Liberty maintains that it terminated Whitmore based on her unprofessional behavior and insubordination, witnessed on multiple occasions by Liberty employees. Specifically, Liberty asserts that Whitmore's "acts of insubordination in yelling at both Ms. Shook and Ms. Pedersen were critical, non-discriminatory factors in Liberty Healthcare's decision to terminate [Whitmore]." Liberty also recalls co-worker and resident complaints regarding Whitmore's behavior as reasons leading up to the decision to terminate her contract.

3. <u>Pretext for Discrimination</u>

Because Liberty has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, to prevail, Whitmore "must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination." *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999) (quotation omitted); *see Reeves*, 530 U.S. at 143; *Hicks*, 509 U.S. at 507-08; *McDonnell Douglas Corp.*, 411 U.S. at 804; *Vaughn*, 665 F.3d at 637; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005). In attempting to satisfy this burden, Whitmore must "offer sufficient evidence to create a genuine issue of material fact either (1) that [Liberty's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Liberty's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Whitmore's] protected characteristic (mixed-motive[s] alternative)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *accord Vaughn*, 665 F.3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008). "In assessing whether a protected characteristic was 'a motivating factor,' a court must consider the evidence presented by the plaintiff as a whole." *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 365 (5th Cir. 2009) (citing *Machinchick*, 398 F.3d at 355). If the plaintiff demonstrates that her race was a "motivating factor" in the employment decision, the defendant must then prove "that the same adverse employment decision would have been made regardless of discriminatory animus." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid*, 376 F.3d at 312); *accord Black*, 646 F.3d at 269 n.6; *Machinchick*, 398 F.3d at 352. The plaintiff

will prevail if the employer fails to carry this burden. *Keelan*, 407 F.3d at 341; *Machinchick*, 398 F.3d at 352; *Rachid*, 376 F.3d at 312.

Pretext may be established "'either through evidence of disparate treatment or by showing that the employer's explanation is false or 'unworthy of credence.'" *Nasti*, 492 F.3d at 593 (quoting *Laxton*, 333 F.3d at 578); *see Vaughn*, 665 F.3d at 637. Nevertheless, "the plaintiff always bears the burden of 'persuading the trier of fact that the defendant intentionally discriminated' against [her]." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 n.5 (5th Cir. 2004) (quoting *Reeves*, 530 U.S. at 143); *see Vaughn*, 665 F.3d at 637; *Nasti*, 492 F.3d at 593; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753-54 (5th Cir. 2005); *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 476 n.3 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006). "To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Nasti*, 492 F.3d at 593; *accord Laxton*, 333 F.3d at 578.

"On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *accord Franklin v. Boeing Co.*, 232 F. App'x 408, 410 (5th Cir. 2007); *Rubinstein v. Adm'rs Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001). Hence, the plaintiff's assertion of pretext must be supported by more than mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext. *See Jackson*, 602 F.3d at 379; *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008); *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001). If the evidence presented is "not

so persuasive so as to support an inference that the real reason was discrimination," then the plaintiff has failed to meet her burden. *Rubinstein*, 218 F.3d at 400; *accord Price*, 283 F.3d at 724.

"When an employee is discharged based on complaints lodged by other employees, the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, but only as to the complaining employee." *Gallow v. Autozone, Inc.*, 952 F. Supp. 441, 446 (S.D. Tex. 1996) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)). Thus, "[t]he real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith or, to the contrary, whether the employer did not believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal." *Id*. (citing *Waggoner*, 987 F.2d at 1165). The inaccuracy of the reports, absent evidence that management was somehow complicit, is not indicative of discrimination or pretext. *See Bryant*, 413 F.3d at 477-78. "The burden is on the plaintiff to demonstrate that the employer did not believe in good faith an employee complaint but relied on it as a pretext for discrimination." *Gallow*, 952 F. Supp. at 446 (citing *Waggoner*, 987 F.2d at 1166); *see Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987); *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982); *Dickerson v. Metro. Dade Cty.*, 659 F.2d 574, 581 (5th Cir. 1981).

At most, Whitmore may have presented some evidence suggesting that she was improperly accused of yelling at Liberty employees and residents and of acting unprofessionally in the alleged situations. She has failed, however, to adduce evidence indicating that Liberty did not believe, in good faith, the employee and patient complaints regarding her behavior. *See Sybrandt v. Home*

*Depot, U.S.A., Inc.*, 560 F.3d 553, 558-59 (6th Cir. 2009) ("[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). Rather, the record reflects that Shook and Pedersen conducted interviews and investigations as a follow-up to the complaints, and they acted as deemed appropriate based on their investigations.

Furthermore, although Whitmore argues that she was never formally disciplined based on the complaints, Shook and Pedersen were not required to implement disciplinary measures before terminating Whitmore's contract. *See Nix v. WLCY Radio/Rahall Commc'ns.*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination."); *Gallow*, 952 F. Supp. at 448 n.6 ("[T]he failure to investigate (while possibly a poor business practice) does not establish that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination."). Nonetheless, they documented her behavior through "Employee Counsel" forms and "Concern Forms" and followed up with Whitmore through verbal counseling. Additionally, Whitmore's unsupported assertion that Shook and Pedersen repeatedly disregarded black employees' versions of the events involving Whitmore and interviewed only non-black employees does not suffice to show that Liberty's reasons for terminating Whitmore are false or unworthy of credence or that discrimination lay at the heart of Liberty's decision. Indeed, although Whitmore claims that McNeil witnessed several of the events in question, Whitmore testified at deposition that McNeil did not tell Whitmore that she would support Whitmore's accounts of the events, nor did Whitmore proffer a statement from McNeil

in support of her claims. Accordingly, Whitmore's subjective perception of discrimination is all that remains. Her evidential support on the issue of pretext consists primarily of the uncorroborated, self-serving assertions in her deposition testimony, which are insufficient to withstand summary judgment. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (concluding that self-serving statements are insufficient to withstand summary judgment); *see also Sullivan*, 591 F. App'x at 247; *Moore v. Solar Grp.*, 311 F. App'x 722, 724 (5th Cir. 2009).

Liberty further points out that it is illogical to conclude that the same employees who hired Whitmore, specifically Shook and Pedersen, would, only a few months later, discriminate against her based on her race. If Shook or Pedersen had disliked Whitmore because of her race, or for any other reason, they would not have hired her. The Fifth Circuit has held that this situation "gives rise to an inference of non-discrimination" because it is illogical to assume that a decisionmaker would recommend that an employee from a protected group be selected for a position merely to terminate her once she is on the job. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997); *accord Fitzpatrick v. Pontotoc Cty.*, 612 F. App'x 770, 776 n.5 (5th Cir. 2015); *Russell*, 235 F.3d at 228 n.16. In *Brown v. CSC Logic, Inc.*, the Fifth Circuit specifically approved this "same actor" inference:

> "[C]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the putative discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."

82 F.3d 651, 658 (5th Cir. 1996) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)); *accord Fitzpatrick*, 612 F. App'x at 776 n.5; *Nieto*, 108 F.3d at 624; *see Tellepsen Pipeline Servs. Co. v. NLRB*, 320 F.3d 554, 570 n.4 (5th Cir. 2003). As in *Brown*, the facts in this case are not

"sufficiently egregious to overcome the inference" that Liberty's stated reason for its actions is not a pretext for racial discrimination. 82 F.3d at 658.

Therefore, under the totality of the circumstances, Whitmore has not rebutted Liberty's ample evidence of a legitimate, nondiscriminatory reason for her termination. As a consequence, Whitmore cannot prevail on her Title VII or § 1981 claims of employment discrimination, and summary judgment in favor of Liberty is warranted.

III.   Conclusion

Therefore, Liberty's Motion for Summary Judgment is GRANTED. Whitmore fails to present a claim that warrants relief under Title VII or § 1981. There remain no material facts in dispute, and Liberty is entitled to judgment as a matter of law with respect to Whitmore's claims of employment discrimination brought under Title VII and § 1981.


    SIGNED at Beaumont, Texas, this 10th day of November, 2015.



                              _____
                                    MARCIA A. CRONE
                              UNITED STATES DISTRICT JUDGE